UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-02023

FRED NEKOUEE, individually,                    :
                                               :
                Plaintiff,                     :
                                               :
vs.                                            :
                                               :
RLET PROPERTIES OMX, LLC, a Colorado           :
limited liability company; and                 :
                                               :
OFFICEMAX NORTH AMERICA, INC., an              :
Ohio corporation;                              :
                                               :
                                               :
                Defendants.                    :
_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendants, RLET PROPERTIES OMX, LLC, a Colorado limited liability company; and

OFFICEMAX NORTH AMERICA, INC., an Ohio corporation (sometimes referred to as

"Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to

the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant RLET PROPERTIES OMX, LLC owns the property at and near 1120

Ken Pratt Boulevard, Longmont, Colorado 80501, in Boulder County ("Property").

3.      Defendant OFFICEMAX NORTH AMERICA, INC.'s store is located at the

Property ("OfficeMax").

4.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.  The Defendants' Property and OfficeMax are located in and do business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

6.      Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

7.      The Property is a place of public accommodation.

8.      OfficeMax is a place of public accommodation.

9.      Defendants are each responsible for complying with the obligations of the ADA.

10.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

11.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

12.      Fred Nekouee has visited the Property which forms the basis of this lawsuit on August 1, 2018; and on May 8, 2019; and he bought goods at OfficeMax and sought to avail himself of the goods and services at the Property on such dates.

13.     Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018 and again on May 8, 2019.

14.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

15.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

16.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the Property and at OfficeMax.

17.     The Plaintiff has definite plans to return to the area and to the Property and to OfficeMax in late September or early October 2019.

18.     The Property and OfficeMax are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

19.     The Plaintiff likes the goods and supplies offered for sale at OfficeMax at the Property.

20.     The Plaintiff plans to return OfficeMax to buy office supplies or stamps.

21.     For the reasons set forth in paragraphs 11-20 and 33, Fred Nekouee plans to return to Property, and to OfficeMax.

22.     The Plaintiff has encountered architectural barriers at the Property.

23.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms there.

24.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

25.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

26.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

27.     On his visit to Property, the Plaintiff encountered excessively steep slopes in its parking lot.

28.     The running slope of the walking surface in front of OfficeMax on the accessible route to the entrance to OfficeMax is steeper than 1:48.

29.     The cross slope of the walking surface in front of OfficeMax is steeper than 1:48.

30.     The Plaintiff encountered and observed barriers to access in the men's restroom in OfficeMax; and so, he also tried to use the women's restroom in OfficeMax, in which women's restroom he also encountered and observed barriers to access.

31.     The Plaintiff is deterred from visiting the Property even though he enjoys its goods, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

32.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 38 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

33.     Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Property without fear of discrimination.

34.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

35.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

36.     Physical conditions that exist at the Property are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 38 below

37.     Preliminary inspections of Property and OfficeMax show that violations of the ADA exist as set forth in paragraph 38 below.

38.     The violations of the ADA that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   (i) In the parking lot, the running slope of the front section (closer to the curb) of the access aisle in front of OfficeMax is steeper than a slope of 1:48.   (ii) This running slope of the front section of this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep slope and it made his wheelchair unstable. (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) The cross slope of the walking surface in front of the main entrance to OfficeMax is steeper than a slope of 1:48.   (ii) The cross slope of this walking surface in

front of the main entrance to OfficeMax is as steep as about 1:26.3 (3.8%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered the steep cross slope of this area of the walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) The cross slope of the walking surface in front of OfficeMax near the parking space with a symbol painted in blue and white is steeper than a slope of 1:48.   (ii) The cross slope of this walking surface is steeper than 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (ii) Due to its steep cross slope, the Plaintiff's wheelchair was made unstable while he moved in his wheelchair on this walking surface along the accessible route from the parking space for disabled patrons to the entrance of OfficeMax. (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) The curb ramp leading to the walking surface in front of OfficeMax contains a change of level greater than 0.5 inches.   (ii) This transition along the accessible route from the parking space marked for disabled use to the curb ramp shown in the photograph below is about 1 inch and greater than a change in level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this change in level and it stopped the forward movement of his wheelchair, made his wheelchair unstable, and he required assistance to move over this change of level. (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) The transition from the access aisle to the curb ramp shown in the photographs below has a change of level of greater than 0.5 inches.   (ii) The transition from the access aisle to the curb ramp along the accessible route to the entrance to OfficeMax has a change of level of about 1 inch and greater than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG § 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair, made his wheelchair unstable, and he required assistance to move his wheelchair over this change in level.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





**MEN'S RESTROOM IN OFFICEMAX**

f.  (i) The force needed to the open the entrance door to the men's restroom in OfficeMax is more than 5 pounds.  (ii) The force needed to open this door is about 12 pounds and greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  (iii) Due to the force necessary to open this door, the Plaintiff required assistance to open this door and to enter the men's restroom in OfficeMax.  (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

g.  (i) The length of time for the door to the men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.  (ii) The length of time for the door to the men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.  (iii) Due to the short time for this door to the men's restroom to close, the door closed on his wheelchair before the Plaintiff could not make it through the door.  (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

h.  (i) The outside of the men's restroom in OfficeMax, does not have any signage with the international symbol of accessibility.  (ii) As shown in the photograph below, the men's restroom does not have any signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.  (iii) The Plaintiff observed this lack of signage, and it deters him from shopping at OfficeMax.  (iv) The action required

to place signage at the entrance to the men's restroom with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



i.      (i) In the men's restroom in OfficeMax, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than 18 inches.   (ii) This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance space, the Plaintiff required assistance to exit the men's restroom while moving in his wheelchair.   (iv) The

actions required to relocate this trash can and to put in place a written policy not to place a trash can by this door are easily accomplishable and able to be carried out without much difficulty or expense.

j.    (i) In the men's restroom in OfficeMax, a door pull is not provided on both sides of the door near the latch of the toilet compartment.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of door pulls on the door to the accessible toilet compartment door, the Plaintiff could not fully close the door when he used the toilet.   (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

k.    (i) In the men's restroom in OfficeMax, the operation of the door latch to the toilet compartment door requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door latch to the accessible toilet compartment door requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door latch with a closed fist or loose grip.   (iv) The action required to install a door latch on this accessible toilet compartment door that could be operated with a closed fist or loose grip is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) In the men's restroom in OfficeMax, the lavatory drain pipes under the sinks are not fully insulated.   (ii) As shown in the photograph below, the lavatory drain pipes under the sinks in this men's restroom are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of full insulation on the drain pipes under

the sinks in this men's restroom, the Plaintiff risked skin burns and injury to his legs when he used one of the sinks.   The Plaintiff observed that the drain pipes under these sinks are not fully-insulated.   (iv) The actions required to fully insulate the drain pipes under these sinks and to maintain the insulation are easily accomplishable and able to be carried out without much difficulty or expense.



m.    (i) In the men's restroom in OfficeMax, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) The outlet to this paper towel dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain a paper towel by using this outlet.   (iv) The action required to relocate this paper towel dispenser is easily

accomplishable and able to be carried out without much difficulty or expense.

n.    (i) In the men's restroom in OfficeMax, the coat hook in the toilet compartment is higher than 48 inches above the floor.   (ii)   As shown in the photograph below, the coat hook in this accessible toilet compartment is about 57 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from shopping at OfficeMax.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.



**WOMEN'S RESTROOM IN OFFICEMAX**

o.    (i) The force needed to the open the entrance door to the women's restroom in OfficeMax is more than 5 pounds.   (ii) The force needed to open this door is about 12 pounds and greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance to open this door and to enter the women's restroom in OfficeMax.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

p.    (i) The outside of the women's restroom in OfficeMax, does not have any signage with the international symbol of accessibility.   (ii) As shown in the photograph below, the women's restroom does not have any signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it deters him from shopping at OfficeMax.   (iv) The action required to place signage at the entrance to the women's restroom with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.



q.   (i) In the women's restroom in OfficeMax, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than 18 inches.   (ii) This door pull side maneuvering clearance in front approach beyond the latch and parallel to the doorway is blocked by a trash can and is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance space, the Plaintiff required assistance to exit the women's restroom while moving in his wheelchair.   (iv) The actions required to relocate this trash can and to put in place a written policy not to

place a trash can by this door are easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the women's restroom in OfficeMax, a door pull is not provided on both sides of the door near the latch of the toilet compartment.   (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of door pulls on the door to the accessible toilet compartment door, the Plaintiff had difficulty opening this door when he used the toilet. (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the women's restroom in OfficeMax, one of the lavatory drain pipes under a sink is not insulated and the lavatory drain pipe under the other sink is not fully insulated. (ii) As shown in the photographs below, the lavatory drain pipes under the sinks in this women's restroom lack insulation or are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of full insulation on the drain pipes under the sinks in this women's restroom, the Plaintiff risked skin burns and injury to his legs when he used one of the sinks.   The Plaintiff observed that the drain pipes under one of these sinks is not insulated.   (iv) The actions required to fully insulate the drain pipes under these sinks and to maintain the insulation are easily accomplishable and able to be carried out without much difficulty or expense.





    **t.**    (i) The coat hook in the women's restroom in OfficeMax is higher than 48 inches above the floor.   (ii) This coat hook is about 57 inches above the finish floor and higher

than 48 inches above the finish floor, outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting OfficeMax.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in OfficeMax, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser that holds extra rolls in a vertical position so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in OfficeMax, the handle to operate the paper towel dispenser is higher than 48 inches above the floor.    (ii) The handle to operate this paper towel dispenser is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1. (iii) Due to the height of this handle above the floor, the Plaintiff could not obtain paper towels from this dispenser.   (iv) The action required to relocate or replace this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

w. (i) In the women's restroom in OfficeMax, the outlet of the toilet seat cover dispenser is higher than 48 inches above the floor.   (ii) The outlet of this toilet seat cover dispenser is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, the Plaintiff could not reach a toilet seat cover when he used this restroom.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

39.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

40.    The discriminatory violations described in paragraph 38 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

41.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

42.    Defendants have discriminated against the individual by denying individuals access

to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

43.    Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

44.    Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

45.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

46.    Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were

designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

47.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

48.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property, OfficeMax, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to

take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*